**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHANTEL PARRIA** | **CIVIL ACTION** |
| **VERSUS** | **NO. 23-3663** |
| **GERALD CVITANOVICH, ET AL.** | **SECTION "O"** |

# ORDER AND REASONS

Before the Court is Plaintiff Shantel Parria's motion[1] for partial summary judgment on liability against Defendant Jefferson Parish Sheriff's Office Commander Donald Meunier as to Parria's claim for unreasonable seizure and detention without probable cause in violation of her Fourth Amendment rights under *Franks v. Delaware*, 438 U.S. 154 (1978). Having considered Parria's motion, Meunier's response,[2] Parria's reply,[3] Parria's motion for partial summary judgment is **DENIED WITHOUT PREJUDICE**.

## I. BACKGROUND

This case arises out of the alleged wrongful arrest, detention, and prosecution of a wife for her husband's murder.

Approaching midnight on June 17, 2018, then-Jefferson Parish Sheriff's Office ("JPSO") Sergeant Troy Smith sustained a single gunshot wound to the head,

[1] ECF No. 68.
[2] ECF No. 74.
[3] ECF No. 78.

inflicted during a domestic dispute with his wife, Shantel Parria, in the bedroom of the house they shared. Smith died in the hospital one week later.

On July 10, 2018, JPSO Homicide Division Commander Donald Meunier authored a five-page Affidavit for Arrest Warrant (the "Affidavit"), which was presented to a commissioner, who issued an arrest warrant for Parria.[4] In the early morning hours on July 11, 2018, Parria was arrested pursuant to that warrant and charged with second-degree murder in violation of LA. STAT. ANN. § 14:30.1.[5]

Commander Meunier's Affidavit predicated the initial arrest warrant issued in July 2018. After her initial arrest, probable cause was twice more deemed to support Parria's continued detention and ultimate prosecution for second-degree murder.[6] First, a few weeks after Parria was arrested, on August 6 and 7, 2018, a Preliminary Examination was held in the 24th JDC by Commissioner Paul Schneider, who at the conclusion of the two-day hearing determined that probable cause existed to "hold Ms. Shantel Parria for . . . Second Degree Murder."[7] Second, three months after the Preliminary Examination hearing, on November 8, 2018, a grand jury returned a formal indictment against Parria for second-degree murder.[8]

---

[4] ECF Nos. 68-1 at 2 (Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment); 68-2 (Plaintiff's Statement of Uncontested Material Facts) ¶ 1; 1 ¶ 503. It is the Meunier Affidavit on which Parria predicates her motion for partial summary judgment, seeking judgment in her favor that Meunier violated the Fourth Amendment by causing her to be unreasonably seized and detained under *Franks v. Delaware*, 438 U.S. 154 (1978).

[5] ECF No. 1 ¶ 450.

[6] *See, e.g.,* ECF No. 1 ¶¶ 779 (alleging that Defendants "presented . . . fabricated evidence at Shantel's Preliminary Examination/first Bond Reduction hearing and to the grand jury"), 819 (similar), 857 (similar).

[7] *See* ECF No. 24-3; *See also, e.g.,* ECF No. 1 ¶¶ 135, 372, 485, 621-23, 653, 779.

[8] ECF No. 1 ¶¶ 19, 136, 313, 827, 328-29. Parria alleges that various JPSO Defendants' intentional and malicious actions and omissions tainted the deliberations of the grand jury. Though Parria in her complaint advances such allegations concerning the preliminary examination and grand jury proceeding, she does not brief the legal implications of these other proceedings in her partial

Once in custody on July 11, 2018, Parria was unable to satisfy the bond set to secure her release pending trial—notwithstanding her efforts to reduce it—and thus remained in custody for four years pending trial for second-degree murder. Following a jury trial that began on August 15, 2022, Parria was acquitted and released on August 26, 2018.[9]

This civil rights lawsuit followed against certain police officers, coroner's office officials, and the prosecutors involved in the death investigation and Parria's prosecution.[10] The prosecutor and coroner defendants moved to dismiss Parria's claims against them; the Court granted the motions so those claims have been dismissed.[11] A motion to dismiss or for summary judgment by the JPSO Defendants was denied.[12] While the motions to dismiss were pending—before any scheduling order issued—Parria filed the instant motion seeking partial summary judgment against Defendant Meunier for unlawful seizure and detention without probable cause in violation of the Fourth Amendment under *Franks v. Delaware*. Parria submits that the undisputed facts establish that Meunier's myriad misleading statements and material omissions in his July 10, 2018 Affidavit violated Parria's clearly established constitutional right to be free from arrest or detention that is not predicated on probable cause.

---

summary judgment motion; rather, she seeks to prove her *Franks* cause of action against Commander Meunier solely on the basis of the alleged misstatements and material omissions in the July 2018 warrant affidavit.

[9] ECF No. 1 ¶¶ 756, 776.

[10] Parria filed her verified complaint on August 18, 2023. ECF No. 1, 1-1.

[11] *See* ECF Nos. 101, 102.

[12] ECF No. 103.

The JPSO Defendants oppose Parria's motion for partial summary judgment and invoke qualified immunity. Though they fail to controvert Parria's Statement of Uncontested Material Facts, Defendants submit a Statement of Uncontested Facts of their own in which they identify purportedly independent intermediaries and set forth the dates on which those intermediaries' findings of probable cause arguably insulate the JPSO Defendants from *Franks* liability. In reply, Parria contends that Defendants are deemed to have admitted all facts listed in Parria's Statement of Uncontested Material Facts and, further, that it is Defendants' burden to show that material information omitted from the warrant affidavit was in fact presented to these intermediaries, here, a state court commissioner and the grand jury.

## II. LEGAL STANDARDS

### A. *Procedure*: Federal and Local Summary Judgment Rules

*Fed. R. Civ. P. 56*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

> any, which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

"When the movant also carries the burden of proof at trial," as Parria does here, "the burden is even higher; [Plaintiff] must establish beyond peradventure *all* of the essential elements of the claim[.]" *Cunningham v. Circle 8 Crane Servs., L.L.C.*, 64 F.4th 597, 600 (5th Cir. 2023) (internal citation and quotation marks omitted) (emphasis in original).

"Only if the movant succeeds must the nonmovant designate specific facts showing that there is a genuine issue for trial." *Id.* (internal citation and quotation marks omitted). In considering the record, the Court "view[s] the evidence in the light most favorable to the nonmovant"—here, Defendant Meunier—"and draw[s] all reasonable inferences in that party's favor." *Flores v. Wal-Mart Stores Texas, L.L.C.*, 855 F. App'x 203, 204 (5th Cir. 2021) (quoting *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020)). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

*LR 56.1, 56.2*

This Court's local rules mandate that "[e]very motion for summary judgment must be accompanied by a separate and concise statement of the material facts which the moving party contends present no genuine issue." *See* LR 56.1; *see also* LR 56.2

(mandating that any opposition to a motion for summary judgment include its own separate statement of material facts which presents a genuine issue). Compliance with these rules not only facilitates the Court's review, but it also ensures that the parties carry their respective burdens in demonstrating entitlement to judgment as a matter of law, or in demonstrating that triable issues remain for trial. When the party opposing summary judgment fails to comply with its LR 56.2 obligation, consequences ensue: "All material facts in the moving party's statement will be deemed admitted, for purposes of the motion, unless controverted in the opponent's statement." *Id.*

**B. *Substance*: 42 U.S.C. § 1983**

Enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, 42 U.S.C. § 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarski v. Delia*, 566 U.S. 377, 380 (2012). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983. The statute's "purpose [] is to deter state actors from using their badge of authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted). Because § 1983 merely provides a remedy for designated rights, rather than creating substantive rights, "an underlying constitutional or statutory violation is a predicate to liability." *Harrington v. Harris*, 118 F.3d 359, 365

(5th Cir. 1997) (citation omitted). To establish § 1983 liability, the plaintiff must satisfy three elements: "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted).

**1. Qualified Immunity**

The JPSO Defendants invoke qualified immunity, which they contend immunizes them from Parria's Section 1983 wrongful arrest and detention claim against them in their individual capacities.

Qualified or "good faith" immunity is available for officials sued in their individual capacities for executory or investigatory functions. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 807-08 (1982) (citations omitted); *accord Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (citation omitted). Because such immunity is an immunity from suit, not merely a defense to liability, "it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (denial of qualified immunity is immediately appealable; a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation). "[T]he qualified immunity defense [] provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). That is, "[q]ualified immunity gives government officials

breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Invocation of a "qualified immunity defense alters the usual summary judgment burden of proof." *Kokesh v. Curlee*, 14 F.4th 382, 392 (5th Cir. 2021) (citation omitted). Indeed, as the Fifth Circuit has instructed:

> Although nominally an affirmative defense, ***the plaintiff has the burden to negate the defense once it is properly raised***. The plaintiff has the burden to point out clearly established law [and] bears the burden of raising a fact issue as to its violation. Thus, once the defense is invoked, the plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct according to that law.

*Id.* (cleaned up, emphasis added).

### 2. Unlawful Seizure and Detention: Fourth Amendment *Franks* Violation

"The Constitution does not guarantee that only the guilty will be arrested." *Smith v. Gonzalez*, 670 F.2d 522, 526 (5th Cir. 1982) (quoting *Baker v. McCollan*, 443 U.S. 137, 145 (1979)). Rather, the Fourth Amendment's focus is on reasonableness and probable cause, as it guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and mandates that "no warrants shall issue, but upon probable cause, supported by oath or affirmation[.]" U.S. CONST. amend. IV.

Simply put, "[t]he Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). Law enforcement detains a person in the absence of probable

cause: (a) when it "hold[s] someone without any reason before formal onset of a criminal proceeding" and it occurs (b) "when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.* (observing that, in either scenario, "a person is confined without constitutionally adequate justification" and, in the latter scenario, the "legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement"). The Fourth Amendment's "warrant requirement is meant 'to allow the magistrate to make an independent evaluation of the matter' [and thus i]t requires affiants to 'set forth particular facts and circumstances underlying the existence of probable cause,' including those that concern the reliability of the information and the credibility of the source to avoid 'deliberate[] or reckless false statement[s].'" *Winfrey v. Rogers,* 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks v. Delaware,* 438 U.S. 154, 164 (1978)).

*Franks* Violation

Under *Franks v. Delaware*, a criminal "defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'" *Winfrey,* 901 F.3d at 494 (quoting *Franks,* 438 U.S. at 155–56). "[A]n officer who recklessly or intentionally contributed misleading statements or omissions to a warrant affidavit violates the arrestee's constitutional rights." *Hughes v. Garcia*, 100 F.4th 611, 620 (5th Cir. 2024); *Thompson v. McGehee*, 183 F.4th 353, 363 (5th Cir. 2026) (observing

that "*Franks* liability is assessed on a defendant-by-defendant basis"). Furthermore, "the right to be free from police arrest without a good faith showing of probable cause . . . has been clearly established since *Franks*." *Hughes*, 100 F.4th at 620.

To assess a *Franks* claim, the Court is obliged to perform a "reconstructed" or "corrected" affidavit analysis: "[T]he essential inquiry is whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' ***after*** the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *McGehee*, 183 F.4th at 368 (citations omitted, emphasis in original).

*Probable Cause*

To determine whether an officer had probable cause for an arrest, courts examine the "totality of the circumstances" and determine "'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer' demonstrate 'a probability or substantial chance of criminal activity.'" *Terwilliger v. Reyna*, 4 F.4th 270, 282 (5th Cir. 2021) (citing *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018)). Probable cause is "is not a high bar: It requires only the kind of 'fair probability' on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (cleaned up, citations omitted). Courts describe the low threshold of probable cause as "something more than bare suspicion, but need not reach the fifty percent mark." *See United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999); *see also Reitz v. Woods*, 85 F.4th 780, 794 (5th Cir. 2023) (observing that, "[i]nsofar as 'probable cause' means something more than 'mere suspicion,' it still does not reach the preponderance-of-the-evidence standard").

In the false arrest context, the plaintiff "must clear a significant hurdle to defeat qualified immunity[:] 'there must not even 'arguably' be probable cause for the . . . arrest for immunity to be lost.'" *Brown v. Lyford*, 243 F.3d 185, 190 (5th Cir. 2001). To be sure, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Club Retro, LLC v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Accordingly, to negate qualified immunity, the plaintiff must show that the officer had no arguable probable cause to believe the plaintiff committed the charged crime.

Notably, "evidence that the arrestee was innocent of the crime is not necessarily dispositive of whether the officer had probable cause to conduct the arrest because 'probable cause requires only a substantial chance of criminal activity, not an actual showing of such activity.'" *Deville v. Marcantel*, 567 F.3d 156, 165 (5th Cir. 2009) (citation omitted). Thus, "an acquittal does not necessarily signal an absence of probable cause for an arrest, for the standards for a determination of probable cause and for a criminal conviction markedly differ." *Laviage v. Fite*, 47 F.4th 402, 407 n. 9 (5th Cir. 2022) (citation omitted).

*The Independent Intermediary Doctrine and the Taint Exception*

When a plaintiff's claims depend on a lack of probable cause to arrest, the independent intermediary doctrine may be implicated. *Green v. Thomas*, 129 F.4th 877, 888 (5th Cir. 2025) (citation omitted). The "doctrine ensures that officers can make reasonable probable cause mistakes[.]" *Hughes v. Garcia*, 100 F.4th 611, 619 (5th Cir. 2024). "Generally, if an independent intermediary, such as a justice of the

peace, authorizes an arrest, then the initiating party cannot be liable for false arrest." *Shaw v. Villanueva*, 918 F.3d 414, 418 (5th Cir. 2019). That is, "'[a] warrant secured from a judicial officer typically insulates law enforcement personnel who rely on it' from liability for unlawful arrest, even in the absence of probable cause." *Hughes*, 100 F.4th at 619 (citation omitted).[13]

The doctrine is typically framed thusly: "It is well settled that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Mayfield v. Currie*, 976 F.3d 482, 486-87 (5th Cir. 2020) (citations omitted); *see also Espinal v. City of Houston*, 96 F.4th 741, 745 (5th Cir. 2024) (citations omitted) (noting that "even when an officer arrests a suspect without probable cause, the independent intermediary doctrine shields him from liability if a grand jury subsequently indicts the suspect"); *cf. Russell v. Altom*, 546 F. App'x 432, 437 (5th Cir. 2013) (citing *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975) ("A grand jury indictment is sufficient to establish probable cause."). Even if the officer acted with malice, the intermediary's action occurred after arrest, and the criminal defendant was never convicted of the charged crime, the arresting officer is "shielded from liability by the independent intermediary doctrine" so long as "the

[13] The proposition *Hughes* quotes appears unaffected by the pocked history of the *en banc* case it cites: *Villarreal v. City of Laredo*, 94 F.4th 374, 393 (5th Cir. 2024) (*en banc*), *cert. granted and judgment vacated by Villarreal v. Alaniz*, 145 S. Ct. 368 (2024), *on remand to Villarreal v. City of Laredo*, 134 F.4th 273, 276 (5th Cir. 2025) (observing—over a dissent which observes that "a majority of our *en banc* court summarily decides that Ms. Villarreal loses again, despite nearly six years of tenacious First Amendment litigation that culminated successfully in the High Court"—that "previous *en banc* majority opinion is superseded only to [a limited] extent" relative to the First Amendment retaliation claim), *cert. denied*, 607 U.S. ---, 146 S. Ct. 939 (2026)).

facts supporting the warrant or indictment are put before an impartial intermediary." *Buehler v. City of Austin*, 824 F.3d 548, 554 (5th Cir. 2016).

The independent intermediary shield is not absolute, however. *Mayfield*, 976 F.3d at 487. "Under the 'taint' exception, an independent intermediary's probable cause finding does not protect law enforcement whose 'malicious motive . . . lead[s] them to withhold any relevant information, or otherwise misdirect[ ] the magistrate or the grand jury by omission or commission." *Buehler*, 824 F.3d at 554-55 (cleaned up). In other words, "[t]he chain of causation [for false arrest] remain[s] intact[ ] if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Russell*, 546 F. App'x at 437 (quoting *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988)); *Hand*, 838 F.2d at 1427-28 ("[T]he chain of causation [for false arrest] is broken [by the independent intermediary's charging decision] only where all the facts are presented to the grand jury [or other independent intermediary], where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary[.]").

So "if the plaintiff shows that the defendant tainted the intermediary's decision-making process, the defendant can be liable." *Shaw*, 918 F.3d at 417 (citation omitted). The "taint exception" to the independent intermediary doctrine thus probes whether the intermediary is "truly independent" of a preceding *Franks* violation. *See Wilson v. Stroman*, 33 F.4th 202, 208-09 (5th Cir. 2022) (citations omitted, emphasis in original) (observing that "the initiating party may be liable for false arrest if the

plaintiff shows that 'the deliberations of that intermediary were in some way *tainted* by the actions of the defendant'"). Accordingly, "[t]he independent intermediary doctrine does not apply if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant' and that 'taint' is material—'that is, even knowing misstatements or omissions will not satisfy the taint exception if the misstated or omitted information would not have altered the intermediary's probable cause finding.'" *Green*, 129 F.4th at 888 (citations omitted).

Critically, "[u]nder established circuit law, [the plaintiff] ha[s] the burden of affirmatively showing that the grand jury's [or other independent intermediary's] deliberations were tainted[.]" *See Buehler*, 824 F.3d at 557; *see also Green*, 129 F.4th at 888-89 and n.54 (citation omitted) (describing the standard for taint in grand jury deliberations as "relatively low" and further observing generally that plaintiffs face "a higher burden of proof" at summary judgment). "[M]ere allegations of 'taint,' without more, are insufficient to overcome summary judgment[ and it is] the plaintiff [who] must 'affirmatively show [ ]' that the defendants tainted the intermediary's decision." *Buehler*, 824 F.3d at 555 (citations omitted).

A *Franks* violation constitutes a standalone cause of action,[14] and it also serves as "an exception to the independent intermediary doctrine[.]" *See Terwilliger v. Reyna*, 4 F.4th 270, 281 (5th Cir. 2021) (observing that *Franks* operates

[14] Unlike a *Franks* violation, which serves both as a separate cause of action and an exception to the independent intermediary doctrine, the taint exception is not a cause of action; that is, technically, the officer is not liable for tainting the intermediary. *Wilson*, 33 F.4th at 209. Conceptually, the Fifth Circuit has explained, *Franks* and the taint exception overlap. *Id.* But the taint exception is just that—an exception—"an exception to a doctrine that insulates an official who would otherwise be liable for false arrest." *Id.* (citing *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).

"[f]unctionally [as] an exception to the independent intermediary doctrine" such that "officers who deliberately or recklessly provide false, material information for use in an affidavit or who make knowing and intentional omissions that result in a warrant being issued without probable cause may still be held liable"); *see also Wilson*, 33 F.4th 202. The false arrest "chain of causation remains intact if 'it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Terwilliger*, 4 F.4th at 281. To determine whether a warrant was tainted by a warrant affidavit, "the essential inquiry is [the corrected affidavit analysis, that is,] whether 'there remains sufficient content in the warrant affidavit to support a finding of probable cause' *after* the 'material that is the subject of the alleged falsity or reckless disregard is set to one side.'" *Id.* (quoting *Franks*, 438 U.S. at 171–72).

Where only one intermediary is involved, a plaintiff that proves a *Franks* claim will also establish the taint exception as to that intermediary. *Wilson*, 33 F.4th at 209-10. By contrast, "in a *Franks* case where a second intermediary is involved, a plaintiff need only show that the deliberations of the intermediary were tainted such that the second intermediary, like the first, did not have 'all the facts' before it necessary to render an independent determination of probable cause." *Id.* at 210 (citing *Winfrey v. Rogers*, 901 F.3d 483, 497 (5th Cir. 2018)). In other words, the plaintiff must show that the second intermediary was "misled in similar fashion" as the first intermediary; if she does so, the taint exception will apply to that intermediary's decision. *Id.* at 212. To underscore, it is the plaintiff's burden to establish both *Franks* liability and taint, *i.e.*, that the intermediary's deliberations

were tainted such that the taint exception applies to a second (or third) intermediary's probable cause determination. *See id.*

## III. ANALYSIS

Applying these principles to the partial summary judgment record as contextualized by the parties' briefing, Parria has failed to satisfy her burden to demonstrate that she is entitled to partial summary judgment in her favor on the Fourth Amendment *Franks* claim. Parria's singular focus on Meunier's Affidavit on which the initial arrest warrant was predicated dooms her motion for partial summary judgment where, as here, subsequent intermediaries, including a grand jury, have been identified as having found probable cause to detain and prosecute Parria. Parria fails to submit any evidence indicating that the Meunier Affidavit's allegedly false statements and material omissions tainted subsequent intermediaries—the commissioner at the preliminary examination in August 2018 and the grand jury in November 2018. On this record, partial summary judgment must be denied.

### A. The Parties' Contentions and Scope of the Partial Summary Judgment Record

Parria seeks partial summary judgment in her favor regarding her *Franks* claim, specifically, she contends that she is entitled to partial judgment as a matter of law that Commander Meunier's July 2018 Affidavit contained false statements and material omissions that were made with reckless disregard for the truth and that were necessary to the finding of probable cause. She submits that no reasonable magistrate would have issued a warrant on the basis of a corrected affidavit because

the only surviving allegations would involve non-material inconsistencies in Parria's accounts of where she was standing when the shooting took place and whether she believed her husband intended to kill himself. Though Parria submits some 20 exhibits, Parria limits her focus to Meunier's Affidavit as the source of the false statements and material omissions predicating her Fourth Amendment false arrest/detention claim. Likewise, Parria limits the summary judgment evidence accordingly, submitting that the offending Affidavit tainted the original arrest warrant issued in July 2018.[15]

The JPSO Defendants, including Commander Meunier, counter that Parria's motion should be summarily denied because Parria has failed to rebut their qualified immunity defense. They submit that Parria's only potential *Franks* (or taint) evidence pertains to the July 2018 warrant. The JPSO Defendants contend that two probable cause determinations by independent intermediaries after the initial warrant issued insulate them from any alleged false arrest claim.[16]

Parria replies that the JPSO Defendants must do more than identify subsequent intermediaries. She suggests that Meunier has failed to meet his burden of showing that all of the material omitted information was presented to each intermediary. Given that it is at best unclear what facts—much less whether all the facts—were presented to the commissioner or the grand jury, Parria contends that

[15] ECF No. 68.
[16] ECF No. 74.

the JPSO Defendants have not shown that the independent intermediary doctrine applies.[17] Parria's argument misapprehends her burden.

### B. Absent Evidence that the JPSO Defendants Tainted the Subsequent Intermediaries' Probable Cause Determinations, Partial Summary Judgment Is Not Warranted.

#### 1. Once Intermediaries Are Identified, the Plaintiff Must Show Taint.

As a threshold matter, the parties clash over which party bears the burden to establish the independent intermediary doctrine's taint exception at the summary judgment stage. Parria cites one unpublished Fifth Circuit opinion suggesting the defendant bears the burden. *Winfrey v. Johnson (Winfrey III)*, 766 F. App'x 66, 70-72 (5th Cir. 2019) (observing that the court was "bound by [the prior panel's] rejection of the independent intermediary doctrine as to the grand jury because it was unclear whether the officer presented all the facts to the grand jury"). True, the *Winfrey III* panel observed that

> The panel in [*Winfrey v. Rogers*, 901 F.3d 483, 497 (5th Cir. 2018)] *Winfrey II* rejected Johnson's independent intermediary argument as to the grand jury because it was "unclear" whether Johnson presented all the facts to the grand jury. . . . [T]he exception to the independent intermediary doctrine applies with equal force because, under *Winfrey II*, it is Johnson's burden to prove the omitted material information was presented to the judge. He has not done so. And again, since the panel in *Winfrey II* analyzed the very same affidavit, this court is bound by its rejection of the independent-intermediary doctrine.

*Winfrey III*, 766 F. App'x at 71-72. Notably, the *Winfrey II* panel opinion *Winfrey III* references denied the defendant's summary judgment motion, finding that the

---

[17] ECF No. 78.

independent intermediary doctrine did not apply for two reasons: first, because "at best, it is not clear whether 'all the facts [were] presented to the grand jury[;]'" and second, because as to one of the proffered intermediaries, there was no evidence in the record indicating that that intermediary determined there was probable cause so there was "no basis to find that the subject material omitted information was presented [to that intermediary, the state-trial judge]." 901 F.3d at 497 (observing that "as far as this record is concerned, the only information before a grand jury was the information in Johnson's affidavit. Neither the plaintiff nor defendant has shown otherwise.").

Ultimately, *Winfrey III* is distinguishable. There, a deputy defendant sought summary judgment based on the independent intermediary doctrine; the only information before the grand jury was the same warrant affidavit that, when corrected, failed to implicate probable cause; and the prior panel ruling (which bound *Winfrey III*) rejected application of the independent intermediary doctrine for fact- and record-specific reasons. More importantly, published cases (predating and post-dating *Winfrey III*) explicitly hold that the plaintiff bears the burden to affirmatively show that law enforcement tainted an intermediary's probable cause finding. *See, e.g., McLin*, 866 F.3d at 689 ("We have previously held that 'mere allegations of 'taint,' without more, are insufficient to overcome summary judgment.'"); *Buehler*, 824 F.3d at 555-56 (observing that "the plaintiff must 'affirmatively show[ ]' that the defendants tainted the intermediary's decision" and finding no error in district court's summary judgment ruling that the plaintiff "failed to show a triable issue whether

the grand jury's findings of probable cause were obtained by false or misleading statements by the arresting officer");[18] *Cuadra v. Houston Ind. Sch. Dist.*, 626 F.3d 808, (5th Cir. 2010) (finding that the plaintiff failed to raise a fact issue as to lack of probable cause or whether three independent intermediaries had been tainted); *Taylor v. Gregg*, 36 F.3d 453, 456-57 (5th Cir. 1994) (finding that the plaintiffs failed to present summary judgment evidence showing that the intermediary was tainted by the defendants' actions), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc); *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir. 1988) ("An independent intermediary breaks the chain of causation unless it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.").[19] The Court is bound by these authorities, which squarely

[18] There, the panel faulted Buehler for "cit[ing] no direct evidence of what was actually presented to the grand jury, though the record does suggest that [law enforcement officers] testified similarly to the grand jury as they did in their depositions on some matters." *Id.* Indeed, "[e]ven assuming that the evidence Buehler points to mirrors grand jury testimony, it does not show that the grand jury's findings of probable cause that Buehler failed to obey lawful orders were tainted by the officers' knowing misstatements or omissions." *Id.*

[19] Not only is the Court bound by these authorities, but placing the burden on the plaintiff to prove taint makes doctrinal sense. Considering the conceptually-related *Franks* and taint exceptions to the independent intermediary doctrine, and the unless-it-can-be-shown rule as stated in *Hand*, it would make little sense to require an arresting officer both to: (i) invoke the independent intermediary doctrine as a defense to a *Franks* cause of action, thereby asserting that the intermediary's probable-cause determination breaks the false arrest chain of causation, but then additionally to (ii) impose on the same officer the burden of production as to either exception to the independent intermediary doctrine/defense, *i.e.*, task the officer with proving that he also violated *Franks* as to that intermediary and/or tainted that intermediary.

That said, *Hand* also observed that "the chain of causation [for false arrest] is broken [by the independent intermediary's charging decision] only where ***all the facts*** are presented to the grand jury [or other independent intermediary], where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand*, 838 F.2d at 1427-28 (emphasis added). Indeed, this "all the facts" standard is repeatedly invoked in the independent intermediary doctrine cases. Nevertheless, Parria—the summary judgment movant—has submitted no evidence into the record anchoring the commissioner's or the grand jury's probable-cause determination to Meunier's Affidavit, or to anything at all. Whether the JPSO Defendants may bear some burden of production with respect to this "all the facts" standard (or, put differently, whether the defendants must show that any material facts which the plaintiff submits were omitted from the grand jury proceeding were, in fact, presented) seems likely once an initial taint presentation

govern and indeed doom Parria's motion for partial summary judgment on the current limited record.

### 2. There Is No Evidence in the Record Showing that the Defendants Tainted the Commissioner's or Grand Jury's Probable Cause Determinations.

That Parria bears the burden of establishing taint is dispositive of her motion for partial summary judgment on which she also bears the burden. Where, as here, more than one intermediary determined that probable cause supported her detention and prosecution, the independent intermediary doctrine may be triggered to insulate Meunier from a *Franks* violation committed before a prior intermediary.[20] It is Plaintiff's burden to show that the JPSO Defendants tainted the identified intermediaries,[21] *i.e.*, that the commissioner during the preliminary examination and the grand jury during the grand jury proceeding were misled in the same way that the magistrate that approved the original warrant was misled. *See Wilson v. Stroman*, 33 F.4th 202, 210 and n.8 (5th Cir. 2022) ("If the plaintiffs wish to establish a *Franks* violation, or, similarly, wish to establish the taint exception to the independent intermediary doctrine, they must point to omitted or misrepresented facts[.]"). But Parria offers no evidence that these intermediaries were misled; the singular focus of her motion is on Meunier's Affidavit and whether it tainted her

---

is made, but is merely academic on this record when Parria as movant has offered merely allegations—not evidence—concerning taint.

[20] True, Defendants have not established beyond peradventure that the independent intermediary doctrine applies to break the chain of causation of the purportedly false arrest, but Defendants have not moved for summary judgment in their favor.

[21] The JPSO Defendants identify two intermediaries and Parria herself alleges in her verified complaint that, after the initial arrest warrant was issued in July 2018, two intermediaries subsequently determined that probable cause supported her arrest or prosecution.

initial arrest warrant.[22] Parria's failure to contend with, much less submit evidence bearing on any evidence submitted to either independent intermediary dooms her motion for partial summary judgment. Having disclaimed that she carries the burden to show taint, she has not even attempted to discharge it.

To be sure, "a ***properly secured*** arrest warrant or grand jury indictment will shield a defendant who has committed or initiated a false arrest." *Wilson*, 33 F.4th at 208 (emphasis added). If a plaintiff pleads or proves that an officer obtained an arrest warrant from a magistrate in violation of *Franks*, then the independent intermediary doctrine does not apply with respect to *that* intermediary's decision. *See id.* However, that would "not necessarily prevent a second intermediary's decision—such as a grand jury's subsequent indictment—from triggering the independent intermediary doctrine to ultimately insulate the officer from liability." *Id.* (citing *Winfrey v. Rogers*, 901 F.3d 483, 489-90, 496-97 (5th Cir. 2018)).

Because this is "a *Franks* case where a second intermediary is involved, [Parria] need only show that the deliberations of the intermediary were tainted such that the second intermediary, like the first, did not have 'all the facts' before it necessary to render an independent determination of probable cause." *Id.* at 210 (citation omitted). Perhaps because she filed her motion for partial summary

[22] In light of the two intermediaries identified, it would be at best premature and at worst academic to perform a corrected warrant analysis to determine whether the initial probable cause determination in July 2018 was tainted by Meunier's Affidavit.

judgment while the motions to dismiss were still pending (ostensibly before discovery was underway), Parria does not attempt to meet her burden.[23]

Parria seeks partial judgment in her favor regarding whether Meunier's Affidavit tainted the initial magistrate's/commissioner's probable cause determination in issuing the July 2018 warrant. But there is no evidence to suggest that probable cause to continue Parria's detention and pursue her prosecution for second-degree murder was based entirely on Meunier's Affidavit or similar allegedly false statements or material omissions contained therein. That's because—twice after her initial arrest—other intermediaries determined probable cause existed to detain and prosecute Parria for second-degree murder.[24] For one, a few weeks after Parria was arrested, on August 6 and 7, 2018, a Preliminary Examination was held in the 24th JDC by Commissioner Paul Schneider, who at the conclusion of the two-day hearing determined that probable cause existed to "hold Ms. Shantel Parria for . . . Second Degree Murder."[25] And, three months later on November 8, 2018, a grand jury

[23] In addition to *Wilson*'s suggestion "a plaintiff need *only* show . . . taint[,]" *id.* (emphasis added), other authorities likewise indicate that "[t]he standard for 'taint' in grand jury deliberations is relatively low." *Green*, 129 F.4th at 888-89. Regardless, the focus is on the intermediary's independence, which may only be assessed in light of what evidence was provided to that intermediary. *Cf. Buehler*, 824 F.3d at 556 (observing that the Fifth Circuit has "rejected taint arguments even where the grand jury did not hear from pro-plaintiff witnesses and the plaintiff 'dispute[d] the version of the facts presented as well as the prosecutor's failure to present potentially exculpatory evidence,' explaining 'that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge'"). Here, there is nothing in the record concerning what sort of evidence was provided to the grand jury so Parria does not satisfy even the relatively low burden.

[24] *See, e.g.*, ECF No. 1 ¶¶ 779 (alleging that Defendants "presented . . . fabricated evidence at Shantel's Preliminary Examination/first Bond Reduction hearing and to the grand jury"), 819 (similar), 857 (similar).

[25] *See* ECF No. 24-3; *See, e.g.,* ECF No. 1 ¶¶ 135, 372, 485, 621-23, 653, 779.

returned a formal indictment against Parria for second-degree murder.[26] Though Parria advances unadorned "upon information and belief" *allegations* in her complaint concerning the preliminary examination and grand jury deliberations having been "taint[ed],"[27] she does not mention, much less submit evidence regarding how these other proceedings were tainted in her partial summary judgment motion. Parria's "mere allegations of taint are insufficient at summary judgment[.]" *See McLin*, 866 F.3d at 690 (internal quotations, citations omitted); *accord Espinal v. City of Houston*, 96 F.4 741, 746 (5th Cir. 2024) (citation omitted) (observing in the motion to dismiss context that "[m]erely invoking the taint exception is not enough[; r]ather, 'a plaintiff must show that the official's malicious motive led [him] to withhold relevant information or otherwise misdirect the independent intermediary by omission or commission'").

There being no evidence in the summary judgment record respecting taint, whether the JPSO Defendants tainted the latter two intermediaries' proceedings or deliberations or, instead, whether the indictment was supported by probable cause, thus remains a triable issue. On the record submitted, Parria is not entitled to partial summary judgment.

---

[26] ECF No. 1 ¶¶ 19, 136, 313, 827, 328-29. For example, Parria alleges that various JPSO Defendants' intentional and malicious actions and omissions tainted the deliberations of the grand jury.

[27] *See, e.g.,* ECF No. 1 §§ 313, 329, 527, 797.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's motion[28] for partial summary judgment is **DENIED WITHOUT PREJUDICE**.

New Orleans, Louisiana, this 24th day of August, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[28] ECF No. 68.